IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-210-D
No. 5:20-CV-428-D

STANLEY JAMAR RAGIN,        )
                            )
    Petitioner and Defendant, )
                            )
    v.                      )    ORDER
                            )
UNITED STATES OF AMERICA,   )
                            )
    Respondent.             )

On August 4, 2020, Stanley Jamar Ragin ("Ragin" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 96-month sentence [D.E. 85]. On September 24, 2021, the government moved for summary judgment [D.E. 95] and filed a memorandum, statement of material facts, and exhibit in support [D.E. 96, 97, 97-1]. On September 28, 2021, the court notified Ragin of the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 98]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On December 14, 2021, Ragin responded in opposition [D.E. 115].

On October 5, 2021, Ragin moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 99]. The court appointed counsel to assist Ragin with filing a memorandum in support of his motion for compassionate release [D.E. 100], and on November 23, 2021, counsel filed a memorandum and exhibits in support [D.E. 106, 109]. On December 7, 2021, the government responded in opposition [D.E. 111, 112]. On December 13, 2021, through counsel, Ragin replied [D.E. 114]. Ragin filed an additional pro se motion to reduce his sentence [D.E. 119],

which the government opposes [D.E. 120]. As explained below, the court denies the government's motion for summary judgment, denies Ragin's motion for compassionate release, and denies Ragin's motion for a sentence reduction.

I.

A.

On January 7, 2019, pursuant to a plea agreement, Ragin pleaded guilty to two counts of a superseding indictment charging him with conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin (count one) and distribution of a quantity of heroin (count two). See [D.E. 59]; Plea Agr. [D.E. 60]. The government agreed to dismiss the original indictment and count three of the superseding indictment at sentencing, and the parties stipulated to several sentencing factors. See Plea Agr. [D.E. 60].

On August 8, 2019, the court held Ragin's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); PSR [D.E. 68]; [D.E. 76]. The court sustained Ragin's objection to the application of a 2-level enhancement under U.S.S.G. § 3C1.1 and calculated Ragin's total offense level to be 23, his criminal history category to be V, and his advisory guideline range to be 84 to 105 months' imprisonment. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Ragin to 96 months' imprisonment on each count, to run concurrently. See [D.E. 79]. Ragin did not appeal.

Ragin contends that he "understood that he would be serving a 70-month sentence once he signed a plea, but he was misled by counsel." 2255 Mot. at 4; cf. [D.E. 67] 4. According to Ragin, he instructed counsel to file a notice of appeal, and she did not do so. See 2255 Mot. at 4; see Ragin Decl. [D.E. 115-3]; Owens Aff. [D.E. 115-4] 3. Specifically, Ragin met with his attorney (Nardine

2

Guirguis) directly after the sentencing hearing, and they discussed filing an appeal. See Ragin Decl. [D.E. 115-3]; Guirguis Aff. [D.E. 96-1] ¶¶ 13–14.[1] Ragin knew he only had fourteen days to notice an appeal. See Ragin Decl. [D.E. 115-3]; Guirguis Aff. [D.E. 96-1] ¶ 14. At the conclusion of that meeting, Ragin completed a form, which appears to suggest that Ragin instructed Guirguis not to appeal. See [D.E. 96-1] 6. Ragin contends that approximately a week after the sentencing hearing, he placed a phone call through a third party "and the conversation was clearly about Stanley Ragin wanting to appeal." Owens Aff. [D.E. 115-4] 3. Guirguis's affidavit does not address Ragin's contentions concerning the post-sentencing phone call.

B.

In Ragin's section 2255 motion, Ragin argues he received ineffective assistance of counsel because counsel failed to file an appeal as instructed. See 2255 Mot. at 4. Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial."

---

[1] Guirguis's affidavit is not notarized. However, 28 U.S.C. § 1746 "allows federal courts to consider 'affidavits' that have not been notarized so long as they meet other statutory requirements." Montgomery v. Ruxton Health Care, IX, LLC, No. 3:06cv024, 2006 WL 3746145, at *2 (E.D. Va. Dec. 15, 2006) (unpublished); see Fed. R. Civ. P. 56, advisory committee's notes to 2010 amendment (citing 28 U.S.C. § 1746). The affidavit is signed under penalty of perjury and satisfies Rule 56.

3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 380.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for the factfinder to return a verdict for that party. Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome properly preclude summary judgment. See Anderson, 477 U.S. at 248.

In reviewing a section 2255 motion, the court is not limited to the motion itself. The court also may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225–26 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

The Sixth Amendment imposes a duty upon "counsel to consult with the defendant concerning whether to appeal when counsel has reason to believe 'either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000)); accord Garza v. Idaho, 139 S. Ct. 738, 746–50 (2019); United States v.

4

Cooper, 617 F.3d 307, 312–14 (4th Cir. 2010); Miller v. United States, 150 F. Supp. 2d 871, 881 (E.D.N.C. 2001). The Supreme Court has "defined the term 'consult' to mean 'advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.'" Miller, 150 F. Supp. 2d at 879 (quoting Flores-Ortega, 528 U.S. at 478). "In cases where the attorney consulted with petitioner about an appeal, the attorney 'performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.'" Id. (quoting Flores-Ortega, 528 U.S. at 478); see Garza, 139 S. Ct. at 746–50; United States v. Peak, 992 F.2d 39, 41–42 (4th Cir. 1993).

To demonstrate ineffective assistance of counsel, a party also must show that counsel's deficient performance prejudiced the party. See Strickland v. Washington, 466 U.S. 668, 691–96 (1984). A party does so by showing there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694. When a defendant claims counsel performed deficiently by failing to file a notice of appeal, a defendant shows prejudice by "demonstrat[ing] that there is a reasonable probability that, but for counsel's deficient failure . . . he would have timely appealed." Flores-Ortega, 528 U.S. at 484. The court presumes prejudice when a defendant loses an opportunity to appeal that he would have taken but for counsel ignoring a defendant's express instructions to file a notice of appeal. See Garza, 139 S. Ct. at 749–50; Flores-Ortega, 528 U.S. at 484–86.

Construing the evidence in the light most favorable to Ragin, a genuine issue of material fact exists concerning the substance of Ragin's consultations with counsel about filing a notice of appeal. See Garza, 139 S. Ct. at 746–50; Flores-Ortega, 528 U.S. at 480; United States v. Tidd, 582 F. App'x 242, 242 (4th Cir. 2014) (per curiam) (unpublished). The court directs Magistrate Judge Jones to hold an evidentiary hearing on this claim and to issue a memorandum and recommendation. See,

5

e.g., Toney v. United States, Nos. 5:16-CR-12-D-5, 5:21-CV-221-D, 2022 WL 866303 (E.D.N.C. Mar. 7, 2022) (unpublished), report and recommendation adopted, 2022 WL 855285 (E.D.N.C. Mar. 22, 2022) (unpublished); Diaz v. United States, Nos. 7:09-CR-100-D, 7:11-CV-43-D, 2014 WL 7384974 (E.D.N.C. Dec. 29, 2014) (unpublished); Rahman v. United States, Nos. 7:08-CR-126-D, 7:10-CV-69-D, 2013 WL 5222160 (E.D.N.C. Aug. 27, 2013) (unpublished), report and recommendation adopted, 2013 WL 5230610 (E.D.N.C. Sept. 16, 2013) (unpublished). The court requests Judge Jones to assess Ragin's credibility at the hearing. If Judge Jones determines that Ragin committed perjury at the hearing concerning his discussions with his former counsel concerning an appeal, the memorandum and recommendation should so state. Thus, the court denies the government's motion for summary judgment.

II.

A.

Ragin moves for compassionate release under the First Step Act. See [D.E. 99]. On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is

6

not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment,

7

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

---

or

 (III) experiencing deteriorating physical or mental health because of the aging process,

 that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

 (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

 (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

8

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "§ 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., United States v. Hargrove, 30 F.4th 189, 194–95, 198–200 (4th Cir. 2022); McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On October 14, 2020, Ragin applied to his warden for compassionate release. See [D.E. 109-1] 1. On November 10, 2020, the warden denied Ragin's request. See id. at 2. Ragin has satisfied the exhaustion requirement, and the court addresses Ragin's motion on the merits. Cf. United States v. Muhammad, 16 F.4th 126, 130–31 (4th Cir. 2021).

Ragin seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Ragin cites the COVID-19 pandemic, his medical conditions (asthma, hypertension, obesity,

9

and a history of opioid abuse), his rehabilitation, and his release plan. See [D.E. 99, 109]. As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Ragin argues that his medical conditions place him at heightened risk of serious infection from COVID-19. See [D.E. 99] 3–4; [D.E. 109] 11–15. Beyond arguments about the spread of COVID-19 within the BOP generally and his former facility specifically, however, Ragin does not argue he is unable to manage his medical conditions while incarcerated or that the BOP is not treating his medical conditions.

Ragin's medical conditions have been recognized as potential risk factors for COVID-19. See Centers for Disease Control, People With Certain Medical Conditions (updated May 2, 2022), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited May 4, 2022). However, Ragin has declined to receive a COVID-19 vaccine. See [D.E. 106] 38. Ragin has not disclosed to the court any religious or medical reason why he cannot receive a COVID-19 vaccine.

"[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021); see, e.g., United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished) ("District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release."); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5,

10

2022) (unpublished) ("But these [health] risks can be significantly ameliorated by vaccination, and the district court correctly explained that defendants may not perpetuate their own extraordinary and compelling circumstances for compassionate release by declining the Bureau of Prison's attempt to protect them." (cleaned up)); United States v. Church, No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) (per curiam) (unpublished) ("We agree that [defendant's] unexplained refusal to accept a COVID-19 vaccination when offered negates his otherwise compelling medical reasons for release" (quotation and alteration omitted)); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), petition for cert. filed, No. 21-6594 (U.S. Dec. 15, 2021); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate refusing a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished); United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). Accordingly, reducing Ragin's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Ragin's health conditions, and Ragin's rehabilitation efforts are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However,

11

the wide availability of COVID-19 vaccines greatly diminishes the risk to Ragin from COVID-19 whether he is in prison or not. See, e.g., Thomas, 2022 WL 296594, at *2; Kennedy, 2022 WL 43187, at *2; Church, 2021 WL 5632062, at *2; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Moreover, and in any event, the section 3553(a) factors counsel against reducing Ragin's sentence. See Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Ragin is 49 years old and is incarcerated for conspiracy to distribute or possess with intent to distribute 100 grams or more of heroin and distribution of a quantity of heroin. See PSR ¶¶ 1–4. Ragin sold approximately 1.46 kilograms of heroin in the Fayetteville area from November 2011 to December 22, 2016. See id. ¶ 14. Ragin's criminal history reflects a long-term commitment to career criminality, including numerous convictions for possession and sale of narcotics. See id. ¶¶ 19–23. Ragin has performed poorly on supervision. Indeed, Ragin committed the instant offenses of conviction while under a criminal sentence. See id. ¶ 25.

Ragin has made some positive efforts while federally incarcerated. For example, he has completed BOP education courses. See [D.E. 99-2]; [D.E. 109-3 through 109-5]. He has committed no infractions. See [D.E. 109-2, 109-3]. And he participates in the Inmate Financial Responsibility Program and makes payments. See [D.E. 109-3].

The court must balance Ragin's rehabilitation efforts, his federal conviction, his criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has

12

considered Ragin's potential exposure to COVID-19, his medical conditions, and his advisory guideline range. The court also has considered Ragin's release plan and recognizes Ragin has a supportive family. See [D.E. 99] 4; [D.E. 109-2]. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Ragin's arguments, the government's persuasive response, the need to punish Ragin for his serious criminal behavior, to incapacitate Ragin, to promote respect for the law, to deter others, and to protect society, the court denies Ragin's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

B.

Finally, Ragin moves for a modification or reduction of his sentence [D.E. 119]. Ragin does not cite any statutory or legal basis for the court to grant the motion. Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Here, no exception applies to this general rule. See id.; cf. 18 U.S.C. §§ 3621(b), 3624(c); First Step Act § 404(a), 132 Stat. at 5222. Accordingly, the court denies Ragin's motion.

III.

In sum, the court DENIES Ragin's motions for compassionate release and a sentence modification or reduction [D.E. 99, 119]. The court DENIES respondent's motion for summary judgment [D.E. 95] and REFERS petitioner's claim that counsel did not comply with his express instruction to file an appeal to Judge Jones for a prompt evidentiary hearing and a memorandum and recommendation.

13

SO ORDERED. This 4 day of May, 2022.

                                                                                         JAMES C. DEVER III
                                                                                        United States District Judge